## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREVOR ADKINS and MICHAEL SHULER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PARAMOUNT GLOBAL,<br><br>Defendant. | Civil Action No. 23-cv-10581<br><br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs Trevor Adkins and Michael Shuler on behalf of themselves and all others similarly situated bring this class action complaint against Paramount Global ("Defendant" or "Paramount"), and alleges the following:

## INTRODUCTION

1.    Plaintiffs bring this action on behalf of themselves, the general public, and a class of similarly situated consumers against Paramount regarding its automatic renewal scheme with respect to Paramount subscriptions.

2.    Specifically, Plaintiffs allege that Paramount fails to cancel subscription plans of subscribers that cancel their paid monthly subscription. Instead, Paramount continues to charge consumers unwanted monthly fees even after they attempt to cancel their membership. In so doing, Paramount systematically violates state automatic renewal laws and consumer protection laws by engaging in a pattern and practice of exploiting its members by continuing to charge them monthly fees, without consumers' consent, after they have canceled their memberships.

3.    On behalf of themselves and the proposed classes, Plaintiffs seek damages, restitution,

1

statutory damages, attorneys' fees, and public injunctive relief, as set forth more fully below.

## PARTIES

4.      Plaintiff Trevor Adkins is a citizen and resident of Bowling Green, Kentucky.

5.      Plaintiff Michael Shuler is a citizen and resident of Goodells, Michigan.

6.      Defendant Paramount Global is a Delaware corporation with its principal place of business and headquarters in New York City, New York. Paramount's subscription streaming service, Paramount+, is offered throughout the United States.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action because (1) the proposed classes are comprised of at least 100 members, (2) at least one member of the proposed class is a citizen of a state other than New York, and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

8.      Venue is proper in the United States District Court for the Southern District of New York because Paramount is subject to personal jurisdiction in the Southern District, because Paramount regularly conducts business in the Southern District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District. 28 U.S.C. § 1391.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.      OVERVIEW OF PARAMOUNT+ STREAMING SUBSCRIPTION SERVICE

9.      Paramount is a mass media and entertainment company.

10.     Paramount+ is an American subscription video on-demand over-the top streaming service owned by Paramount Global. Paramount+'s entertainment content includes television shows, original series and films, live streaming sports coverage, and in the United States, live streaming of local CBS broadcast stations.

11.     Paramount offers free trials of its paid subscription service that last anywhere from 7 to 30

days, depending on the offering at the time. Subscribers must enter their credit card information to obtain a free trial. After the free trial is over, subscribers are billed monthly.

12. All Paramount+ subscription plans automatically renew. For example, when the monthly plan ends, the customer is automatically renewed and charged for another month:



13. At the time consumers provide their credit card information to start their Paramount+ subscription, Paramount informs consumers that after the promotional trial period offered, the subscription will automatically renew at a monthly charge unless it is cancelled, and that consumers will not be charged at all if they cancel during the applicable free trial period:



II.    **PARAMOUNT FAILED TO HONOR PLAINTIFFS' REQUESTS TO CANCEL THEIR SUBSCRIPTIONS.**

14.    Defendant routinely fails to cancel paid Paramount subscriptions despite its promise to do so. Plaintiffs experiences are informative.

**A.    Plaintiff Adkin's Experience**

15.    In June of 2022, Plaintiff Adkins provided Paramount with his credit card information for a 30-day free trial of Paramount+.

16.    Prior to the expiration of the 30-day free trial period, Plaintiff Adkins cancelled his Paramount+ subscription using the Paramount+ app on his phone. Plaintiff Adkins recalls receiving a pop-up on his Paramount+ App confirming that his subscription was cancelled.

17.    Despite cancelling his subscription within the free trial period, Plaintiff found that Paramount had not honored his cancellation request and he was billed a monthly fee in July of 2022.

**B.    Plaintiff Shuler's Experience**

18.    In December of 2022, Plaintiff Shuler provided Paramount with his credit card information for a 30-day free trial of Paramount+.

19.    Prior to the expiration of the 30-day free trial period, Plaintiff Shuler cancelled his Paramount+ subscription.

20.    Despite cancelling his subscription within the free trial period, Plaintiff found that Paramount had not honored his cancellation request and he was billed a monthly fee in January of 2023 and February of 2023.

**C.    Paramount is Aware of Its Cancellation Scheme**

21.    Paramount is well aware that its membership cancellation scheme deceives consumers. Hundreds of Paramount paid subscribers have complained of Paramount's failure to honor consumer cancellations. The following online consumer complaints on the Better Business Bureau's website are

indicative of a broader problem:

> On 10/15/23 I signed up for a free 7 day trial of Paramount +, If the subscription was canceled in the 7 day time frame, there would be no charge.On 10/16/23 I was charged $11.99 through the ****** play store. I canceled the subscription on 10/17/23 yet charge has still been applied. I have contacted Paramount and ****** yet no reply.Thank you for your time.*****[1]

> I cancelled a subscription to Paramount+ a month ago (9/20/23) and have been charged a month later (10/18/23). I cancelled before my trial date and was still charged this month.[2]

> I signed up for a free one month trial on Oct 9, 2023. I was immediately billed the full amount of the subscription.[3]

> I was charged during a free trial. I contacted Paramount+ numerous times with proof and was ignored.[4]

> I had a Paramount* account. I cancel it in March 14, 2023. I have the confirmation email. They continue to charge my credit card every month, and I already reach out twice for help and get told everytime they dont find anything even with my credit card number. Last update from them was today saying they came find my card, yet they charge me on 8/18/2023.[5]

## III. DEFENDANT'S SUBSCRIPTION CANCELLATION POLICIES AND PRACTICES DECEIVE CONSUMERS AND VIOLATE STATE CONSUMER PROTECTION AND AUTOMATIC RENEWAL LAWS

22.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."[6]

23.    Similarly, states across the country, including Michigan and Kentucky, have enacted legislation declaring unfair, deceptive, false, or misleading acts or practices in the conduct of trade or commerce to be unlawful.[7]

---

[1]    *Complaints: Paramount+*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/ca/san-francisco/profile/internet-providers/paramount-1116-27331/complaints?page=1&status=&type=billing (last visited Nov. 20, 2023).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] N.Y. GEN. BUS. LAW § 349.
[7] *See* MICH. COMP. LAW § 445.903; KY. REV. STAT. § 367.170.

24.    Furthermore, in February of 2021, New York enacted strict laws governing automatic renewal and continuous service offers and terms in paid subscription or purchasing agreements with consumers ("N.Y. Automatic Renewal Law" or "ARL").[8]

25.    New York's ARL provides: "It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:

    a.    Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change up on conclusion of the trial;

    b.    Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time; or

    c.    Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free gift or trial, the business shall also disclose in the acknowledgement how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

26.    "Automatic renewal," as used in the ARL, means "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." [9]

27.    "Continuous service," as used in the ARL, means "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."[10]

---

[8] N.Y. GEN. BUS. LAW §§ 527, *et seq.*

[9] *Id.* § 527(1).

[10] *Id.* § 527(5).

28.    "Automatic renewal offer terms," as used in the ARL, means the following clear and conspicuous disclosures:

   a.  That the subscription or purchasing agreement will continue until the consumer cancels;

   b.  The description of the cancellation policy that applies to the offer;

   c.  The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

   d.  The length of the automatic renewal term of that the service is continuous, unless the length of the term is chosen by the consumer; and

   e.  The minimum purchase obligation, if any.[11]

29.    The ARL requires "clear and conspicuous" disclosure of automatic renewal offer terms, meaning "in larger type that the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."[12]

30.    Regarding cancellation terms and procedures, the ARL requires a business making an automatic renewal offer or continuous service offer to (1) "provide a toll-free telephone number, electronic email address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation," and (2) allow consumers who accept automatic renewal or continuous services offers online "to terminate the automatic renewal or continuous service exclusively online."[13]

31.    The ARL deems any "goods, wares, merchandise, or products" sent by a business to a

---

[11] *Id.* § 527(2).

[12] *Id.* § 527(3).

[13] *Id.* §§ 527-a(2)–(3).

consumer under a continuous service agreement or automatic renewal of a purchase "without first obtaining the consumer's affirmative consent" to be "an unconditional gift to the consumer."[14]

32.     Defendant engages in unfair, deceptive, false, and/or misleading acts or practices in the conduct of trade or commerce by, *inter alia*, (i) failing to allow Plaintiffs and Class Members to cancel their Paramount+ subscriptions; (ii) failing to honor Plaintiffs' and Class Members' Paramount+ subscription cancellations; and (iii) continuing to post unauthorized charges to Plaintiffs' and Class Members' financial accounts after the cancellation of their Paramount + subscriptions.

33.     Additionally, Defendant's paid Paramount+ subscription is an automatic renewal or continuous service under the ARL, and Defendant is required to comply with the provisions of the ARL in relation to the Paramount+ subscription service Defendant offers to consumers.

34.     Defendant's conduct and practices alleged above violate the ARL by, *inter alia*, (i) failing to allow Plaintiffs and Class Members to cancel their Paramount+ subscriptions; (ii) failing to honor Plaintiffs' and Class Members' Paramount+ subscription cancellations; and (iii) continuing to post unauthorized charges to Plaintiffs' and Class Members' financial accounts after the cancellation of their Paramount + subscriptions.

35.     As a result of Defendant's unlawful conduct and practices alleged above, Plaintiffs and Class Members have been charged unauthorized, recurring fees for a subscription service they took affirmative steps to cancel.

## CLASS ALLEGATIONS

36.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

37.     The proposed classes ("Classes") are defined as follows:

---

[14] *Id.* § 527-a(6).

The Cancellation Class: All persons in the United States who, within the applicable statute of limitations period, cancelled their Paramount+ paid subscription but were subsequently charged by Paramount+ ("Cancellation Class").

38.     Plaintiff Adkins also brings his claims on behalf of a Kentucky subclass.

39.     Plaintiff Shuler also brings his claims on behalf of a Michigan subclass.

40.     Excluded from the Classes are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

41.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and to add subclasses before this Court determines whether certification is appropriate.

42.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

43.     As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Paramount's records. Paramount has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

44.     As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual class members because Paramount has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive; (iii) whether Defendant's conduct caused class members harm; (iv) whether Defendant's

conduct violated state consumer protection laws; (v) the appropriate measure of damages; and (vi) whether Plaintiffs and the class are entitled to declaratory relief, injunctive relief, restitution, or a combination of these.

45.    As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Paramount, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and Class members. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiffs will also serve the interests of the Class.

46.    As to adequacy: Each Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that each Plaintiff is a paid Paramount subscriber and has suffered damages as a result of Paramount's deceptive practices. Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Class; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

47.    As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

48.    As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and Class members to individually seek redress for Defendant's

wrongful conduct.

49.    Additionally, the class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

50.    In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party or parties opposing the Class and would lead to repetitious trials of many common questions of law and fact.

51.    Plaintiffs know of no difficulty to be encountered in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiffs and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

52.    For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

53.    As stated above, Paramount has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

54.    All conditions precedent to bringing this action have been satisfied, waived, or both.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs and the Classes)**

55.     Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully restated here.

56.     New York law applies to the class because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Paramount is in New York, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies.

57.     N.Y. Gen. Bus. Law § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

58.     The deceptive acts or practices and the furnishing of Paramount+ took place in this State because Paramount+ operates in this State and implemented its deceptive cancellation practices in this state. Therefore, the underlying transactions occurred in New York.

59.     Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

60.     By engineering and implementing unfair, deceptive, false, and/or misleading billing and advertising practices, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

61.     Defendant has violated N.Y. Gen. Bus. Law § 349 by, *inter alia*:

a.     Engaging in a marketing and billing program that is likely to mislead a reasonable

consumer acting reasonably under the circumstances;

b.  Failing to allow consumers to cancel their Paramount+ subscriptions;

c.  Failing to honor consumers' Paramount+ subscription cancellations; and

d.  Continuing to post unauthorized charges to consumers' financial accounts after the cancellation of their Paramount+ subscriptions.

62.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

63.    Furthermore, N.Y. Gen. Bus. Law § 527-a(1)(a) provides that "It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to . . . fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services."

64.    N.Y. Gen. Bus. Law § 527-a(3) provides "a consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

65.    Defendant violated N.Y. Gen. Bus. Law § 527-a by failing to honor Plaintiffs and consumers requests to cancel their subscriptions.

66.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

67.    Plaintiffs and the class have been injured by Paramount's violations of N.Y. Gen. Bus. Law

§ 349.

68.     Paramount+'s unlawful, misleading and deceptive conduct occurred, and continues to occur, in the course of Paramount+'s business.

69.     As an actual and proximate result of Defendant's misconduct, Plaintiffs and the Class were injured and suffered damages.

70.     Paramount+ is liable to Plaintiffs and the Class for damages in amounts to be proven at trial.

71.     Plaintiffs and Class Members further seek equitable relief against Defendant. Pursuant to N.Y. Gen Bus. Law § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiffs and Class Members all monthly fees wrongfully assessed and/or collected on it auto-renewal subscription plan.

**SECOND CLAIM FOR RELIEF**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. § 1693, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

72.     Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

73.     Plaintiffs seek to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of themselves and the Nationwide Class.

74.     The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system.[15] The "primary objective" of the EFTA "is the provision of individual consumer rights."[16]

---

[15] 15 U.S.C. §§ 1693, *et seq.*

[16] *Id.* § 1693(b).

75.     Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter."[17]

76.     Defendant's transfers of money from the financial accounts of Plaintiffs and Class Members, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205, *et seq.* An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."[18] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[19]

77.     The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."[20] The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer."[21]

78.     Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by

---

[17] *Id.* § 1693(l).

[18] *Id.* § 1693a(7).

[19] 12 C.F.R. § 205.3(b)(v).

[20] 15 U.S.C. § 1693a(9).

[21] 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[22]

79.    Plaintiffs and Class Members each maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2) and are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5).

80.    Defendant uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiffs and Class Members without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. Specifically, Defendant took money from Plaintiffs' and Class Members' bank accounts without written authorization when Defendant charged Plaintiffs' and Class Members' accounts for Paramount+ subscription fees after Plaintiffs and Class Members had expressly cancelled their subscriptions and revoked any authorization for such transfers.

81.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation."[23]

82.    As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiffs and Class Members have suffered damages in the amount of the unauthorized debits taken by Defendant.[24] As a further direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiffs and Class Members are entitled to recover statutory damages in the amount of

---

[22] *Id.* § 205.10(b).

[23] 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

[24] 15 U.S.C. § 1693(m).

"the lesser of \$500,000 or 1 per centum of the net worth of the defendant."[25]

83.    Pursuant to 15 U.S.C. § 1693(m), Plaintiffs and Class Members are also entitled to recover costs of suit and attorneys' fees from Defendant.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

84.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

85.    Plaintiffs, individually and on behalf of the Classes, assert a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiffs' statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

86.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed subscription fees upon Plaintiffs and the members of the Classes that cancelled their subscriptions that are unfair, unconscionable, and oppressive.

87.    Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiffs and the members of the Classes.

88.    Defendant has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

89.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiffs and the members of the Class and should be required to make restitution to Plaintiffs and the members of the Classes.

---

[25] *Id.* § 1693(m)(a)(2)(B).

**FOURTH CLAIM FOR RELIEF**
**Conversion**
**(On Behalf of Plaintiffs and the Classes)**

90.     Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

92.     As a result of the charges made by Defendant to Plaintiffs' and Class Members' financial accounts without authorization and in violation of state and federal law, Defendant has taken money that belongs to Plaintiffs and the Class Members.

93.     The amount of money wrongfully taken by Defendant is capable of identification.

94.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice.

95.     As a result of Defendant's actions, Plaintiffs and the Class Members have suffered damages.

**FIFTH CLAIM FOR RELIEF**
**Violation of the Michigan Consumer Protection Act**
**Mich. Comp. Law § 445.901, *et seq.***
**(On Behalf of Plaintiff Shuler and the Michigan Subclass)**

96.     Plaintiff Shuler incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

97.     Defendant has violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Law § 445.901, *et seq*.

98.     Section 3 of the MCPA, Mich. Comp. Law § 445.903, *et seq*., provides:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful…

99.     Section 11 of the MCPA, provides in relevant part:

(1) Whether or not a person seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice that is unlawful under section 3.
…

(4) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:

(a)    A method, act, or practice in trade or commerce defined as unlawful under section 3.

Mich. Comp. Law § 445.911, *et seq*.

100.    Plaintiff Shuler and other Michigan subclass members are "consumers" or "persons," as defined under the MCPA, Mich. Comp. Law § 445.901, *et seq*.

101.    Defendant's conduct, as alleged herein, occurred in the course of trade and commerce.

102.    Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of failing to honor consumers' cancellation requests, thereby misrepresenting and failing to disclose its true cancellation policy and practice.

103.    Defendant knowingly and intentionally failed to honor consumers' cancellation requests.

104.    Defendant also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated MCPA by, *inter alia*, abusing its discretion to interpret undefined terms in a manner harmful to consumers and beneficial to Defendant.

105.    Defendant's statements and omissions were material and were likely to mislead Plaintiff and Class members and, in fact, did mislead Plaintiff and Class members.

106.    Defendant made these statements and omissions with the intent that Plaintiff and Class members would rely on them.

107.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered actual damages.

**SIXTH CLAIM FOR RELIEF**
**Violation of the Kentucky Consumer Protection Act**
**Kentucky Revised Statutes 367.110 *et seq.***
**(On Behalf of Plaintiff Adkins and the Kentucky Subclass)**

108.    Plaintiff Adkins incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

109.    Defendant has violated the Kentucky Consumer Protection Act ("KCPA"), Kentucky Revised Statutes 367.110, *et seq.*

110.    The Commonwealth of Kentucky believes that "the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services."[26]

111.    In furtherance of this public policy objective, the Kentucky Consumer Protection Act ("KCPA") was enacted in order to prevent "unfair, false, misleading or deceptive acts or practices in the conduct of any trade or commerce."[27]

112.    Defendant is engaged in trade or commerce as defined in the KCPA because it offered and continues to offer goods and services, such as its Paramount+ subscription services, to the people of Kentucky, including Plaintiff Adkins and the Kentucky Subclass Members.

113.    Plaintiff has standing to bring this action under K.R.S. § 367.220 because Plaintiff entered into a contract with Defendant for a 30-day free trial of Paramount+ primarily for personal, family, or household purposes.

---

[26] K.R.S. § 367.120(l).

[27] *Id.* § 367.170(l).

114.    Defendant engaged in unfair, deceptive, false, misleading, and unconscionable acts and practices within the meaning of the KCPA by misrepresenting true cancellation practices, failing to honor Plaintiff's and Kentucky Subclass members' cancellation requests, and continuing to charge Plaintiff and Kentucky Subclass members financial accounts with unauthorized subscription fees after Plaintiff and the Kentucky Subclass members cancelled their Paramount+ subscriptions. Such deceptive representations, practices, and policies cause injuries to consumers and are unfair and deceptive because consumers do not receive services commensurate with the consumers' reasonable expectations and consumers end up overpaying for Paramount+ subscriptions they believe they had cancelled.

115.    Plaintiff and the Kentucky Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct.  Plaintiff and the Class paid unwarranted and unauthorized subscription fees, or otherwise bargained for a product they did not receive. Plaintiff and the Kentucky Subclass would not have enrolled in or purchased Paramount+ subscriptions from Defendant in the first place, or would have taken other steps to avoid becoming enrolled in and/or charged for Defendant's Paramount+ platform, such that Plaintiff and the Class would not have paid any money to Defendant for Paramount+, if they had been notified of the full terms and conditions of Paramount+ membership and Defendant's unauthorized enrollment practices.

116.    Plaintiff Adkins and the Kentucky subclass have suffered loss of money or property as a result of Defendant's actions and are entitled, pursuant to K.R.S. 367.220, to actual damages, equitable relief, punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

1.    Certification for this matter to proceed as a class action on behalf of the Classes pursuant to Rule 23;

2.      Appointment of the Plaintiffs as representatives of the Classes;

3.      Appointment of counsel for Plaintiffs as Lead Counsel for the Class;

4.      A finding that Paramount's practices are in violation of state consumer protection statutes;

5.      Restitution of all amounts improperly paid to Paramount by Plaintiffs and the members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

6.      Actual damages in an amount according to proof;

7.      Statutory damages as allowed by law;

8.      An award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

9.      An award of costs and attorneys' fees under the common fund doctrine and all other applicable law; and

10.     Declaratory and injunctive relief on behalf of the general public.

11.     Plaintiffs also request such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: December 4, 2023

By: /s/ James J. Bilsborrow
James J. Bilsborrow (JB8204)
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500
jbilsborrow@weitzlux.com

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

Sophia Goren Gold
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

**JOHNSON FIRM**
Christopher D. Jennings
Tyler B. Ewigleben
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com

*Attorneys for Plaintiffs and the Proposed Class*